IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| BENJAMIN FREEDLAND | : CIVIL ACTION |
|---|---|
| v. | : NO. 18-2250 |
| CARMEN FANELLI, *et al.* | : |

## MEMORANDUM

**KEARNEY, J.**                                                                            **June 10, 2019**

Congress requires a prisoner challenging federal prison officers' conduct pursue and exhaust claims through the federal prison's defined administrative process. Congress also requires the prisoner allege a specific prison officer caused him physical injury or committed a sexual act towards him before the prisoner can sue an officer for mental or emotional injury suffered while in custody. A prisoner claiming a prison officer told another officer of his location as a protected government witness while investigating his claim of injury must exhaust this claim and plead some form of physical injury or sexual act relating to the officer being sued. We also find no authority to extend a federal prison officer's civil rights liability for exchanging prisoner location information for purely investigative purposes when no physical harm results. We grant the prison officer's motion to dismiss claims against her in the accompanying Order.

**I.  Allegations**

On January 15, 2016, Correctional Officer Carmen Fanelli allegedly closed the food tray slot in the opening of Benjamin Freedland's cell door at the Federal Detention Center on Mr. Freedland's hand.[1] Mr. Freedland claims this closure harmed his left hand. Mr. Freedland filed an administrative complaint for staff assault by Officer Fanelli immediately after the incident challenging this closing of the slot on his hand.[2]

In investigating Mr. Freedland's internal complaint against Officer Fanelli, Corrections Specialist Janel Fitzgerald contacted Federal Detention Center Special Investigative Agent Ripka to discuss Mr. Freedland's administrative remedy.[3] Ms. Fitzgerald provided Agent Ripka with Mr. Freedland's location despite his alleged status as a "protected government witness in a protective custody unit."[4] Mr. Freedland alleges Ms. Fitzgerald's disclosure placed him "in potentially grave danger" and violated his Eighth Amendment right to be free from cruel and unusual punishment.[5] He does not plead physical harm or sexual misconduct towards him. Mr. Freedland did not file a grievance on this claim against Ms. Fitzgerald but first raised his claim against Ms. Fitzgerald in an appeal to the General Counsel's Office on May 30, 2017.[6]

Mr. Freedland then *pro se* sued Officer Fisher, Corrections Specialist Fitzgerald, Nurse Practitioner Nelson, and Officer Fanelli.[7] Officer Fisher, Corrections Specialist Fitzgerald, and Nurse Practitioner Nelson moved to dismiss the complaint.[8] Mr. Freedland did not challenge the dismissals of Mr. Fisher or Ms. Nelson.[9] Officer Fanelli answered the *pro se* complaint.

## II. Analysis

The remaining Defendant Ms. Fitzgerald moves to dismiss Mr. Freedland's claims arguing: 1) Mr. Freedland failed to exhaust his administrative remedies for claims against her under the Prison Litigation Reform Act; 2) the Prison Litigation Reform Act bars Mr. Freedland's claim because he does not allege physical injury; and, 3) Mr. Freedland failed to allege a cognizable Eighth Amendment *Bivens* claim.[10] We agree with Ms. Fitzgerald as to Mr. Freedland's failure to exhaust, the Prison Litigation Reform Act's bar on Mr. Freedland's claim, and Mr. Freedland's lack of a cognizable Eighth Amendment claim. We dismiss Ms. Fitzgerald.

We review Mr. Freedland's claims under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*[11] where the Supreme Court recognized "an implied right of action to recover

2

damages against federal officials for constitutional violations."[12] The Supreme Court recognizes Eighth Amendment *Bivens* claims for inadequate medical care and failure to protect.[13]

### A. We dismiss Mr. Freedland's claims for failure to exhaust his available administrative remedies.

Under the Prison Litigation Reform Act, prisoners must exhaust all available remedies before filing suit in federal court.[14] Prisoners must exhaust claims challenging prison conditions, even where the relief sought cannot be granted by the administrative process.[15] Under the Prison Litigation Reform Act, Congress requires "proper" exhaustion, and "demands compliance with an agency's deadlines and other procedural rules."[16] The detail required for compliance with grievance procedures is determined by the prison's requirements, not by Congress.[17] Our Court of Appeals instructs the exhaustion requirement applies to *Bivens* actions, as "Congress clearly intended to sweep *Bivens* actions into the auspices of the § 1997e(a) when it enacted the PLRA."[18] Inmates are not required to plead and prove exhaustion in their initial complaint; failure to exhaust is an affirmative defense the defendants must plead and prove.[19]

The Bureau of Prisons has an administrative system for Federal Detention Center prisoners seeking formal review of their grievance claims.[20] The process requires prisoners to attempt informal resolution of the matter, file an appeal to the Warden, file an appeal with the Regional Director, and file an appeal with the Office of General Counsel.[21] Mr. Freedland's administrative filings confirm he exhausted his claim of being assaulted by a Federal Detention Center staff member.[22]

Mr. Freedland did not exhaust his administrative remedies with respect to his claim against Ms. Fitzgerald. "When failure to exhaust is raised as the basis for a motion to dismiss, dismissal is appropriate only where the failure to exhaust is 'apparent from the complaint or other documents before the [Court].'"[23] The failure to exhaust is not apparent from Mr. Freedland's complaint, in

3

which he alleges "I was assaulted by a correctional officer"[24] and "I filed a BP 8, BP 9, BP 10, and BP 11 all in a timely manner."[25]

But our Court of Appeals directs we can consider an undisputedly authentic document in reviewing a motion to dismiss without converting it to a motion for summary judgment if the plaintiff's claims are based on the document.[26] In *Spruill v. Gillis*, our Court of Appeals considered the grievance documents attached to a motion to dismiss when the plaintiff explicitly referred to the grievances in his complaint alleging exhaustion.[27] We may consider the content of the grievances provided to the court by Attorney Nash because Mr. Freedland explicitly referred to them in his complaint alleging exhaustion.[28]

The Administrative Remedy Program in the Code of Federal Regulations provides an inmate is prohibited from raising issues on appeal without first raising them in the lower level filings.[29] Mr. Freedland raised his claims against Ms. Fitzgerald for the first time in his appeal to the General Counsel's Office on May 30, 2017.[30] The General Counsel properly rejected Mr. Freedland's claims against Ms. Fitzgerald for failing to comply with the Administrative Remedy Program's guidelines."[31]

We dismiss Mr. Freedland's claims against Ms. Fitzgerald for failure to exhaust.

### B. The PLRA requires we dismiss Mr. Freedland's claim against Ms. Fitzgerald because he fails to plead physical injury.

Even if Mr. Freedland had exhausted his administrative process, he fails to state a claim. Mr. Freedland does not allege physical injuries caused by Ms. Fitzgerald. Congress requires a showing of physical injury or the commission of a sexual act before a prisoner can sue in federal court "for mental or emotional injury suffered while in custody."[32] Because Mr. Freedland does not allege Ms. Fitzgerald caused physical injury, Congress mandates dismissal of this claim. But

4

for his failure to exhaust, we would allow Mr. Freedland leave to amend. Absent exhaustion, leave to amend is futile.

## C. Mr. Freedland fails to state a *Bivens* claim under the Eighth Amendment.

Mr. Freedland alleges Ms. Fitzgerald violated his Eighth Amendment right to be free from cruel and unusual punishment when she revealed his location to a Special Investigative Agent while he was a "protected government witness."[33]

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment."[34] Under the deliberate indifference analysis for Eighth Amendment *Bivens* claims, Mr. Freedland must plead: 1) "he is incarcerated under conditions posing a substantial risk of serious harm;" and, 2) a prison official is deliberately indifferent to the health and safety of the inmate.[35]

Mr. Freedland has not alleged facts supporting either of these claims under the Eighth Amendment. Mr. Freedland's claim for inadequate medical care under the Eighth Amendment related only to "Nurse Nelson," and he dismissed claims against her. Mr. Freedland alleges Corrections Specialist Fitzgerald acted "wantonly, maliciously, and willfully,"[36] but he fails to plead "more than labels and conclusions."[37] Despite Mr. Freedland's claim Ms. Fitzgerald's conduct put him in "potentially grave danger," Mr. Freedland fails to plead facts. He also fails to plead physical harm resulting from Ms. Fitzgerald's conduct.

The Supreme Court has not extended the scope of *Bivens* to include situations where prison officials exchange prisoner information for purely investigative purposes and no physical harm results.[38] Expanding *Bivens* into new contexts is a "disfavored" judicial activity.[39] When a party seeks to extend *Bivens* remedies into a new context, the Supreme Court instructs "separation-of-powers principles are or should be central to the analysis."[40]

5

In *Crawford-El v. Britton*, the Supreme Court rejected a court's effort to create new rules concerning prisoner suits.[41] The Court reasoned, "Congress has already fashioned special rules to discourage inmates' insubstantial suits in the Prison Litigation Reform Act. If there is a compelling need to frame new rules…presumably Congress would have done so or will respond to it in future legislation."[42] Congress already proscribed, through the Prison Litigation Reform Act, suits brought by federal prisoners absent allegations of physical harm. If there is a compelling need to frame new rules, Congress will respond through legislation.

We dismiss Mr. Freedland's claim against Ms. Fitzgerald because it is not cognizable under *Bivens*.

## III. Conclusion

In an accompanying Order, we dismiss Mr. Freedland's claims against Corrections Specialist Fitzgerald for failure to exhaust, failure to allege facts showing physical harm required under the Prison Litigation Reform Act, and failure to state a constitutional claim under *Bivens*.

---

[1] ECF Doc. No. 13 at p. 14.

[2] *Id.*

[3] ECF Doc. No. 13 at p. 16.

[4] *Id.*

[5] *Id.*

[6] ECF Doc. No. 56-2 at p. 3-4.

[7] ECF Doc. No. 13 at p. 5, 17.

[8] ECF Doc. No. 41.

[9] ECF Doc. No. 52.

[10] ECF Doc. No. 41. When considering a motion to dismiss "[w]e accept as true all allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and we construe them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

[11] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

[12] *Bistrian v. Levi*, 912 F.3d 79, 88 (3d Cir. 2018).

[13] *See, e.g., Estelle v. Gamble*, 429 U.S. 97 (1976); *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

[14] 42 U.S.C. § 1997e(a).

[15] *Woodford v. Ngo*, 548 U.S. 81, 85 (2006).

[16] *Id.* at 90.

[17] *Jones v. Bock*, 549 U.S. 199, 218 (2007).

[18] *Nyhuis v. Reno*, 204 F.3d 68-9 (3d Cir. 2000).

[19] *Jones*, 549 U.S. at 216.

[20] 28 C.F.R. §§ 542.10-542.19.

[21] *Id.*

[22] ECF Doc. No. 41-1.

[23] *Shirey v. Ladonne*, No. 18-4960, 2019 WL 1470863, at *5 (E.D. Pa. Apr. 3, 2019) (quoting *Ray v. Kertes*, 285 F.3d 287, 297 (3d Cir. 2002)).

[24] ECF Doc. No. 13 at p. 7.

[25] *Id.* at p. 8.

[26] *Grp. Against Smog and Pollution, Inc. v. Shenango Inc.*, 810 F.3d 116 (3d Cir. 2016) (quoting *Pension Benefit Guar. Corp. v. White Consol. Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

[27] *Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004); *See Cooper v. Martucchi*, No. 15-267, 2015 WL 4773450 (W.D. Pa. 2015).

[28] ECF Doc. No. 13 at p. 7-8.

[29] 28 C.F.R. 542.14.

[30] ECF Doc. No. 56-2 at p. 3-4.

[31] ECF Doc. No. 56 at p. 2.

[32] 42 U.S.C. § 1997e(e) ("No federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.").

[33] ECF Doc. 13 at p. 16.

[34] *Farmer*, 511 U.S. at 828.

[35] *Id.* at 834.

[36] ECF Doc. No. 13 at p. 16.

[37] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[38] *See Cuevas v. United States*, No. 16-299, 2018 WL 1399910, at *4 (D. Colo. March 19, 2018) (recognizing disclosure of prisoner information as a "new context.").

[39] *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) ("Because implied causes of action are disfavored, the Court has been reluctant to extend *Bivens* liability 'to any new context or new category of defendants.'") (quoting *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 68 (2001)); *See also Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017).

[40] *Ziglar*, 137 S. Ct. at 1857.

[41] *Crawford-El v. Britton*, 523 U.S. 574 (1998).

[42] *Id.* at 576.